## FERDINAND CLARK *versus* JAMES P. FLINT *et al.*

After an answer to a bill in equity and a general replication have been filed, and evidence taken, and the cause has come on for hearing, it is too late to object to the jurisdiction of the Court on the ground that the plaintiff has an adequate remedy at law, provided it is competent to the Court to grant relief and it has jurisdiction of the subject matter.

A remedy by an action for damages against a person actually insolvent, is not a plain, adequate and complete remedy at law, so as to deprive the Court of jurisdiction in equity.

A bill in equity may be maintained for the specific performance of a written contract relating to *personal* property, if the plaintiff has not an adequate remedy at law.

If one, having the legal title to a chattel, agrees in writing, for a valuable consideration, to hold it subject to the order of the plaintiff, but subsequently assigns it to another with notice of the agreement, the plaintiff may maintain a bill in equity against the assignee for a specific performance of the agreement.

A bill in equity alleged, that one C, being the equitable owner of one half of a certain ship, drew on some of the defendants, in whom was the legal title, an order to pay to the plaintiff all balances due to C in account, and to hold C's half interest in the ship subject to the plaintiff's order, and C's order was accepted in writing absolutely, but that afterward the acceptors assigned the ship to the other defendants, with notice of the acceptance. The answer of the defendants admitted the acceptance of the order, but averred that it was accepted with notice to the plaintiff that no balance was due to C, but on the contrary a large balance was due from him and the vessel was held for such balance. It was *held*, that this allegation was not responsive to the bill, and that parol evidence of it was inadmissible, because it would contradict the written acceptance.

An indenture, containing a general assignment of a debtor's property in trust for the payment of his debts and a release of such debts by the creditors, does not constitute the assignees *bonâ fide* purchasers for a valuable consideration as against one having an equitable title to a portion of the property, unless it be shown that some new responsibility was incurred on the credit of the property or that the creditors would not have become parties to the indenture if they had known that such portion of the property was held by the debtor in trust.

BILL in equity against James P. Flint, Jacob C. Flint, Sherman G. Hill, Charles W. Cartwright and Enoch Train.

The bill alleges, that in 1830 it was agreed between the Flints, then partners under the firm of P. & C. Flint, and Isaac Clark, that the Flints should purchase a brig called the Charles, and that they should pay one half of the purchase money and Isaac Clark the other half, and that after the purchase the Flints should cause the brig to be registered in their own names, and should hold one half of her in trust for the use and benefit of Isaac Clark and subject to his order and disposition, and that she should be employed and navigated by the

Flints for the joint benefit of themselves and Isaac Clark, in the proportion above mentioned, until Isaac Clark should otherwise order and request; that the brig was purchased, registered and employed accordingly; that on the 21st of April, 1830, the Flints did, in writing, acknowledge that they then held one half of the brig in trust and for the benefit and use of Isaac Clark, and did in such writing promise and agree with him, that they, having received the value thereof of him, would give him a bill of sale of one half of the brig, at any time, upon his request or demand; that about the 29th of March, 1830, he paid them one half of the purchase money of the brig, being about $ 2062·72; that the Flints continued so to hold and employ the vessel until the 4th of February, 1834, charging Isaac Clark with half of her disbursements and crediting him with half of her earnings; that on some day after the 21st of April, 1830, and before the 4th of February, 1834, the Flints associated themselves in business with Hill, under the firm of P. & C. Flint & Co., and thenceforward the brig was navigated in the name of the new partnership; that on the 4th of February, 1834, Isaac Clark sold and transferred to the plaintiff all his right, title and interest in and to one half of the brig, and on the same day gave to the Flints written notice thereof, and on the same day addressed to them, by their style

P. & C. Flint & Co., an order and request to hold his half of the brig subject to the orders of the plaintiff, which written order and request the plaintiff did, on the same 4th of February, present to the Flints for their acceptance thereof, and the Flints, together with Hill, did then and there accept the same in writing, and did thereby promise and agree with the plaintiff that they would hold the half of the brig subject to the orders of the plaintiff, and that they would, at any time, upon due request, transfer and convey, by a proper bill of sale, one half of the brig to the plaintiff, and the plaintiff, on the same day, requested them to make such transfer, but that they, confederating with Cartwright and Train, and other persons unknown, absolutely refused to comply with such request, and the Flints and Hill, about the 8th of the same February, without the knowledge of the plaintiff and without any adequate or valuable consideration, or for a merely nominal consideration, trans

ferred to Cartwright and Train the plaintiff's half of the brig, in trust to sell the same and apply the proceeds thereof to the discharge of the debts due from the Flints and Hill to their creditors, Cartwright and Train well knowing all the premises; that about the same 8th day of February, and upon receiving the transfer, Cartwright and Train, by an indenture between themselves and the Flints and Hill, agreed that they would so hold the plaintiff's half of the brig in trust for that purpose; and that the plaintiff, so soon as he knew of that transfer, requested Cartwright and Train to convey one half of the brig to the plaintiff, which they refused to do.

The bill prays, that one half of the brig may be conveyed to the plaintiff, and that an account may be rendered of her earnings since the 4th of February, 1834, and one half of the amount thereof be paid over to him; and that the defendants may, in the mean time, be enjoined from selling the plaintiff's half of the brig.

In the answer of Hill it was alleged, that the Flints were absent from the United States; that by the agreement between them and Isaac Clark, the latter was to be interested in the purchase and earnings of the brig to the amount of a moiety, that whenever he should pay the Flints one half of the purchase money, and one half of the losses, expenses and disbursements in the employment of the brig, and all balances of account between him and the Flints, and all their just demands against him, then and not till then were they to make a bill of sale of a moiety of the brig to him, and in case he should not pay the same within a reasonable time, the Flints were to sell the brig and apply one moiety of the proceeds to pay the same, and if there should be any balance remaining, were to pay it to Isaac Clark or his assigns; that Isaac Clark was charged in account with one half of the purchase money of the brig, as cash, on the 1st of January, 1831, and the account was balanced, and afterwards there were divers dealings between him and P. & C. Flint and P. & C. Flint & Co., and on the 8th of February, 1834, the time of the transfer to Cartwright and Train, the balance due from Isaac Clark was $7234·49, which has never been paid; that the moiety of the purchase money was never paid by Isaac Clark, otherwise than as above men-

Clark
*v.*
Flint.

tioned, and that the charging of the same in account was not intended or understood to give him a right to a bill of sale. The answer admits, that about the 21st of April, 1830, the Flints made and delivered to Isaac Clark a writing in these words : " We guaranty to give Mr. Isaac Clark for value received, a bill of sale for one half of the brig Charles ; " but it alleges that this writing was only intended to show that Isaac Clark was interested in the purchase of the vessel, and was not intended to give him a right to a bill of sale except upon the terms before stated. The answer further admits, that Isaac Clark drew an order as follows : " Boston, February 4th, 1834. Messrs. P. & C. Flint, Boston. Gentlemen, You will please pay to the order of Mr. Ferdinand Clark all balances due me in account, also hold my half interest in brig Charles subject to his order, and very much oblige your obedient servant, Isaac Clark ; " and that this order was accepted by the Flints, on the day of its date, by the respondent's subscribing the name of the firm thereon ; but the respondent says he at the same time informed the plaintiff that no balance was due to Isaac Clark, but on the contrary a large balance was due from him, and that the vessel was held for such balance, and that there would be nothing coming to Isaac Clark, and it was understood, at the time of the acceptance, that it was only to bind the firm for any remaining interest in the brig after satisfying all their just demands. The answer further admits, that the Flints, on the 8th of February, 1834, transferred the brig to Cartwright and Train, by a bill of sale, for a good and valuable consideration, to be held upon certain trusts declared in an indenture of assignment for the benefit of creditors, including Cartwright and Train, whereupon Cartwright and Train accepted the property and released and discharged their demands.

Cartwright and Train, in their answer, say that they are ignorant of most of the facts alleged in Hill's answer, but that they believe his statements to be true ; and they allege that at the time of the assignment to them they had no knowledge and no reason to suspect that either Isaac Clark or the plaintiff had any right, title, interest or claim in or to the brig, in law or equity, and they insist that they are to be regarded as *bonâ*

*fide* purchasers without notice.  They further say, that at the time of the assignment the brig was not worth more than $ 2000, and that Isaac Clark is insolvent and unable to pay the balance of the account.

The plaintiff filed a general replication.

Evidence was taken by the parties, and the case was heard at March term 1837.

*Washburn*, for the plaintiff.

*Rand and Fiske*, for the defendants, said the case did not come within the equity jurisdiction of the Court, in relation either to trusts or the specific performance of contracts.

The Court determined that the bill, considered as seeking to enforce a trust, could not be supported under *St.* 1817, *c.* 87, because there was no trust arising under a deed, will, or in the settlement of an estate.

At March term 1838, the case was again argued on other points.

*Washburn*, for the plaintiff.  The Court have jurisdiction of this case by virtue of *St.* 1817, *c.* 87, giving them "authority to hear and determine in equity all cases of contract in writing, where a party claims the specific performance of the same, and in which there may not be a plain, adequate and complete remedy at law."  By accepting the order of February 4th, 1834, P. & C. Flint & Co. admit Isaac Clark's right to half of the brig and agree to substitute the plaintiff as owner of the same half and to hold it subject to his order; and the plaintiff claims a specific performance of this contract.

Cartwright and Train are not *bonâ fide* purchasers for a valuable consideration, without notice of the plaintiff's claim. They parted with nothing by reason of the conveyance to them.  *Coddington* v. *Bay*, 20 Johns. R. 637 ; *Root* v. *French*, 13 Wendell, 571.

When the bill was filed Cartwright and Train had possession of the brig ; she was registered in their name and they claimed her as their own ; and they are necessarily made parties, to enable the Court to give effect to its decree.  Other persons than those who are parties to the contract, may well be parties to the suit.  *Washburn* v *Goodman*, 17 Pick. 519 ; *Holland* v. *Cruft*, 20 Pick. 321.

*Clark*
*v.*
*Flint.*

*March 25th, 1837.*

*April 3d, 1837*

*March 28th 1838*

That the contract concerns a chattel, is not a valid objection against the equity jurisdiction of the Court to compel specific performance. There is no foundation in principle for a distinction, in this respect, between real estate and personal, and the statute makes no distinction. 2 Story on Eq. Jurispr. 23, 24, 25, 30, 31, (and note 3,) 34; *Mechanics Bank of Alexandria* v. *Seton*, 1 Peters's Supr. C. Rep. 305.

The objection to the jurisdiction was not taken in due season. In May, 1834, the plaintiff demanded of Cartwright and Train a conveyance of his half of the brig, and soon afterwards filed a bill to restrain them from selling the same; after notice, the Court passed an order directing them not to sell until the further order of the Court; a subpœna was issued; the defendants came in and answered to the merits, whereupon the Court dissolved the injunction; the plaintiff filed a replication; a time was fixed for taking the testimony, and testimony upon the merits was taken by both sides; at November term 1836 an order of publication was passed, and the cause set down for hearing at March term 1837; at which term the testimony was read and the cause argued for the plaintiff, before any objection was made to the jurisdiction of the Court. The exception should have been taken on demurrer or plea to the bill. *Ludlow* v. *Simond*, 2 Caines's Cas. in Err. 40; *Underhill* v. *Van Cortland*, 2 Johns. Ch. R. 369; *Hawley* v. *Cramer*, 4 Cowen, 727; *Grandin* v. *Le Roy*, 2 Paige, 509; *Bradley* v. *Root*, 5 Paige, 636; *M'Donald* v. *Crockett*, 2 M'Cord's Ch. R. 135.

The plaintiff has not a plain, adequate and complete remedy at law. A judgment against the Flints would be of no avail, they being insolvent. *Charles River Bridge* v. *Warren Bridge*, 6 Pick. 397, 398; *Bemis* v. *Upham*, 13 Pick. 171; *Rathbone* v. *Warren*, 10 Johns. R. 587; *American Ins. Co.* v. *Fisk*, 1 Paige, 92.

*B. Rand*, for the defendants. The plaintiff has a plain and adequate remedy at law, by an action of trover, or if the chattel has been sold, by an action for money had and received for the proceeds. A bill may be maintained for the specific delivery of a chattel of a peculiar nature, for instance, a picture; but not for the delivery of a ship. And this objection

is not made too late, for consent cannot confer jurisdiction which the legislature have not given to the court.

The specific performance must be by Cartwright and Train, for the Flints have no power to convey the moiety claimed by the plaintiff; but no contract in writing subsists between Cartwright and Train and the plaintiff. This is a complete answer to the bill.

Cartwright and Train are *bonâ fide* purchasers for a valuable consideration. By the indenture of assignment, they release their debtors. They deny notice of the plaintiff's claim, and there is no evidence to contradict them.

WILDE J. delivered the opinion of the Court. This suit was commenced in 1834. The defendants filed their answer, and the plaintiffs filed a general replication. Evidence was then taken and at the hearing of the cause the defendants, for the first time, raised an objection to the jurisdiction of the Court, on the ground that the plaintiff has an adequate remedy at law, and because the Court ought not to entertain jurisdiction in equity for a specific performance of an agreement respecting personal property. It was contended that this objection came too late, as the subject matter of the bill is clearly within the jurisdiction of the Court, and they have a right to judge on the whole matter, as it may appear on the pleadings and evidence, whether the case is such as to justify the interposition of a court of equity, or ought to be left to be determined in a suit at law. This seems to be a reasonable rule, for after the defendants had answered to the merits of the bill, and conse quently great expenses had been incurred, it would seem to be unreasonable to allow them to interpose with an objection which ought to have been made on demurrer to the bill, and before answering to the merits. Under such circumstances a court of equity ought to retain the cause, provided it be competent to grant relief, and have jurisdiction of the subject matter. *Ludlow* v. *Simond*, 2 Caines's Cas. in Err. 40, 56 ; *Underhill* v. *Van Cortlandt*, 2 Johns. Ch. R. 369 ; *M'Donald* v. *Crockett*, 2 M'Cord's Ch. R. 135.

That the Court have jurisdiction of the subject matter in the present case cannot, as we think, be doubted. The only doubt, if there be any, is whether the Court be competent, ac-

· Clark
v.
Flint,

cording to the rules and principles of equity, to grant relief. We have considered one of the defendants' objections in this point of view, and we have also considered the other objection, as we have heard it argued, notwithstanding the rule already noticed. In deciding these objections we have taken no notice of the facts alleged in the answer. Those are denied by the plaintiff, so far as they are contradictory to the allegations in the bill. The question now is, whether if the plaintiff should substantiate these allegations, he would be entitled to relief. And we are all of opinion that he would be.

As to the plaintiff's remedy at law, he has none except against P. & C. Flint & Co. and they are insolvent, and the remedy is of no value. He might recover judgment against them for damages, but unless he could obtain satisfaction of the judgment he would receive no compensation, but would be subjected to the payment of costs. It has been held that a bill will lie for the specific performance of a contract, upon the ground that a court of law could only give a remedy in damages, the beneficial effect of which must depend upon the personal responsibility of the party. And there seems, as Judge *Story* remarks in his Commentaries on Equity Jurisprudence, to have been, in the Supreme Court of the United States, an inclination to sustain such an extensive doctrine. 2 Story on Equity, 31 ; *Doloret* v. *Rothschild*, 1 Sim. & Stu. 590 ; *Mechanics Bank &c.* v. *Seton*, 1 Peters's Supr. C. R. 305. It appears to me that this doctrine ought to be laid down with some limitation. If it is confined to actual insolvency, it is certainly very reasonable and just, for on what plausible ground can it be contended that a judgment against an insolvent contractor is an adequate remedy ? It would be manifestly against equity and justice for a court to decline jurisdiction in such a case. If the party injured by a breach of a contract cannot avail himself of his remedy at law for any beneficial purpose, or if it be doubtful whether he can or not, a court of equity, if it can relieve him, ought certainly to interpose, and compel the other party to perform his contract.

Whether according to the rules and principles of equity the Court can grant the relief prayed for, may be a question of greater doubt and difficulty ; but this will depend upon the

evidence ; for we have no doubt that if the plaintiff shall make out his case as stated in the bill, he will be entitled to relief.

It is objected that the Court ought not to exercise jurisdiction in equity for a specific performance of agreements relating to personal property. And generally that rule has been observed in the English courts, but has been subject to numerous exceptions, and has been uniformly limited to cases where a compensation in damages furnishes a clear and adequate remedy. If the party complaining has no such remedy, it is quite immaterial whether the contract relates to real or personal estate. 2 Story on Eq. 24. The exercise of equity jurisdiction does not proceed upon any distinction between real estate and personal estate ; but because damages at law may not in the particular case afford a complete remedy.

This doctrine is thus laid down by Judge *Story* in his Commentaries, and is fully sustained by the cases cited in support of it. The reasons given for a distinction between real estate and personal estate are not very satisfactory. All, as it seems to me, that can be fairly inferred from the cases on this point is, that in contracts respecting personal estate a compensation in damages is much oftener a complete and satisfactory remedy than it is in those which relate to real estate. But in all cases, if the party has not such a remedy, a court of equity will entertain jurisdiction, and grant relief as justice may require.

I have already shown that the plaintiff has no adequate remedy against P. & C. Flint & Co., and he has no remedy at law against Cartwright and Train, the only solvent defendants.

Then it was objected, that they, not being parties to the contract, ought not to have been parties in this suit, and that this Court have no authority to compel them to convey the premises. If this objection were well founded, the bill should be dismissed as to them ; but still the other defendants might be compelled to convey, in order to enable the plaintiff to contest at law the validity of the assignment to Cartwright and Train. It is however the opinion of the Court, that the objection is unfounded.

In the case of *Champion* v. *Brown*, 6 Johns. Ch. R. 402, Chancellor *Kent* lays it down as a well settled principle, that if A. enters into a contract to sell land to B., and afterwards

Clark
v.
Flint.

refuses to perform his contract and sells the land to C. for a valuable consideration, B. may, by bill, compel the purchaser to convey to him, provided he be chargeable with notice at the time of his purchase. This doctrine is fully maintained by several cases therein cited. In *Taylor* v. *Stibbert*, 2 Ves. jun. 439, it was decided, that a purchaser with notice is bound in all respects as the vendor. "He is liable to the same equity, stands in his vendor's place, and is bound to do that which the person he represents would be bound to do by the decree." The case of *Dawson* v. *Ellis*, 1 Jac. & Walk. 524, was decided on the same principle. The bill was filed to compel the performance of an agreement in writing, made by the defendant Ellis, who admitted the agreement, but averred that he had made a similar previous agreement with the Duke of Norfolk, in pursuance of which he had, subsequently to the filing of the bill, executed a conveyance to him. The Duke of Norfolk was thereupon made a party, and a reconveyance prayed from him to the plaintiff. It was agreed that if there was a previous contract made with the Duke, he could not be compelled to reconvey ; and it was submitted to the Master of the Rolls, on the question whether the treaty between Ellis and the Duke of Norfolk had ripened into a contract or not. The Master of the Rolls, being of opinion on the evidence that it had not, decreed a specific performance and a conveyance to the plaintiff.

The principle on which these cases were decided is directly in point, and we consider it settled upon well known principles of equity in analogous cases. It is similar to the case of a purchaser from a trustee with notice of the trust. In this case P. & C. Flint & Co. held the one half of the vessel in trust for the plaintiff, and if we had had jurisdiction of such a trust when the bill was filed, as we have now, the present question probably would not have been raised. But this same equity applies to the plaintiff's bill in its present form, as would have applied to a bill to enforce a trust. The defendant's objections, for these reasons, are overruled, and the case is to stand over for a further hearing.

June 12th,
1839.

*Washburn* now urged that the allegation in the answers, that the written acceptance of the order did not contain all the terms of the acceptance was not responsive to the bill. and that paro

evidence of the allegation was inadmissible.  2 Story on Equity, 80, 745 ; *Omerod* v. *Hardman*, 5 Ves. 730 ; Sugden on Vend. (9th edit.) 142 ; *Dwight* v. *Pomeroy*, 17 Mass. R. 324 ; *Green* v. *Hart*, 1 Johns. R. 580 ; *Hart* v. *Ten Eyck*, 2 Johns. Ch. R. 89.

*Rand* and *Fiske*, for the defendants.

WILDE J. delivered the opinion of a majority of the Court Several questions have already been considered and decided, to which it is not now necessary to advert, in stating the opinion of the Court as to the other questions which were raised and discussed at the last hearing of the cause.

The defendants, in their answer, aver that on the 8th day of February, when the brig was assigned to Cartwright and Train, there was due to P. & C. Flint & Co. from Isaac Clark a large balance, of over $ 8,000, and they deny that the plaintiff is in equity entitled to the conveyance prayed for until the account between him and P. & C. Flint shall be ascertained and paid.

If this were a suit between Isaac Clark and the Flints, we are of opinion that this objection would be valid, although there was no express agreement that the property should be held in trust by the latter, as security for any balance of accounts or other claim due to them for advances made after the trust estate vested in them ; it being an established rule in equity, that a party who seeks equity must do equity : for a court of equity will never interfere to enforce a contract, unless the plaintiff will consent to do that which the justice of the case requires to be done.

But the question in the present case does not depend on the equitable claim which the Flints have upon Isaac Clark, unless the plaintiff purchased with the knowledge of that claim.  The rule is well established, that where goods are pledged or mortgaged and advances are subsequently made by the mortgagee or pledgee to the mortgager or pledger, such advances are not binding as an equitable lien against the assignee of the mortgager, and he may redeem without payment of the subsequent advances.  So where the vendor has an equitable lien for tne purchase money, although the lien is binding on the vendee and his heirs, it will not bind a purchaser from the vendee for a val-

*Clark*
*v.*
*Flint.*

*June 29th,*
*1839.*

uable consideration, and without notice of the lien.   4 Kent's Comm. 152, 153.   So if a trust for the benefit of creditors be raised by the mortgager, the lien for subsequent advances will not be binding on the trustee.   *Heams* v. *Bance*, 3 Atk. 630.  In *Vanderzee* v. *Willis*, 3 Bro. Ch. R. 21, Lord *Thurlow* so lays down the rule as settled by all the cases, as it undoubtedly is.   The question then is, whether the plaintiff purchased the one half of the vessel of Isaac Clark without any notice of the advances made by the Flints to him after they held his half of the brig in trust.

The defendants, in their answer, admit that P. & C. Flint & Co. accepted the order in writing as alleged in the bill ; but they aver, that at the time of the acceptance, the plaintiff was informed by them that no balance was due to Isaac Clark, but on the contrary, a large balance was due from him, and that the vessel was held for such balance, and that there would be nothing coming to Isaac.   If this were so, it seems difficult to imagine any reason that could induce them to accept the bill This however is not the question now to be decided.   The question is, whether this evidence is admissible, and we think it very clear that it is not.   It is not responsive to the bill, except that part of the answer which admits the acceptance of the bill in writing.   The additional averment of the parol agreement, is not responsive to any averment in the bill ; and it cannot be proved by oral testimony, it being directly to contradict the written contract.

The case therefore depends on the true construction of the written contract.   And we are of opinion, that that cannot be so construed as to render the plaintiff liable, either in law or equity, for any balance due from Isaac Clark to P. & C. Flint.

By the acceptance of the order, P. & C. Flint promised, in express terms, first, to pay to the plaintiff all balances then due in account to Isaac Clark, and secondly, that they would hold the one half of the brig Charles subject to the order of the plaintiff.   If the order had been confined to the transfer of the one half of the vessel, it would be clear that the plaintiff would not be liable for any balance of accounts due from Isaac Clark, and the Flints could have no equitable lien against him

for any such balance.   For if the Flints had an equitable lien
on the vessel, it was relinquished by their unconditional accep-
tance.   If the order had been only for the payment of the bal-
ances due to Isaac Clark, it would be equally clear that the
plaintiff would not be liable for any balance due from Isaac
Clark.   In no form, therefore, is the plaintiff liable for any
balance due from Isaac Clark, and the plaintiff could compel
the Flints, by the terms of their contract, to convey the prop-
erty to him, unless they had a right to credit Isaac Clark with
the value of the vessel.   No such right has been claimed, and
no such credit has been given in the accounts rendered ; and no
such right exists.   It would be inconsistent, not only with P. &
C. Flint & Co.'s contract with the plaintiff, but also with their
agreement with Isaac Clark.   They were to hold the property
in trust for him and to account to him for the earnings.   All
the right they had to the trust property was a lien for the bal-
ance of their accounts, which cannot be enforced against the
plaintiff.

But it has been argued by the counsel for the defendants, that
whatever equitable claim the plaintiff has upon P. & C. Flint
& Co., he is entitled to no relief against Cartwright and Train.
The rule of equity is, that where there is a purchase of real
or personal estate from the legal owner, to which a third party
has an equitable title, and the purchase is made in the usual
course of business, without notice of the equitable title, for a
valuable consideration paid therefor, or if the purchaser incurs
any new responsibilities upon the credit thereof, he is to be
considered a *bonâ fide* purchaser, against whom the owner in
equity can have no relief.   But if no consideration is paid, and
the property be assigned and received in payment of or as se-
curity for a preëxisting debt, the assignee must take it subject
to all the equity to which the assignor was subject.   *Root* v.
*French*, 13 Wendell, 571 ; *Buffington* v. *Gerrish*, 15 Mass.
R. 156.

This was laid down as a well settled principle in *Hunt* v.
*Glidden*, Middlesex, October term 1836, and in several sub-
sequent cases, and it applies in the present case.   The brig
was conveyed by P. & C. Flint & Co. to Cartwright and
Train, with their other property, in trust for their creditors,

Cartwright and Train being of the number. The conveyance was of all the right and title of the assignors, and we do not think that the clause in the assignment whereby the claims of the creditors were released, is to be distinguished from assignments in payment of preëxisting debts. If the consideration for which the release was given should fail, perhaps the release would be void, especially if the debtors had fraudulently procured it by a misrepresentation of the property assigned.

But however this may be, we are of opinion, that the plaintiff's equitable title must prevail, considering all the circumstances of the case ; for it does not appear that the defendants incurred any new responsibility on the credit of the property in question ; or that they would have declined becoming parties to the assignment if they had known that their debtors owned the property in question in trust. Whether Cartwright and Train had such knowledge, or the means of acquiring such knowledge, we do not think it necessary to determine.

For these reasons it is the opinion of the Court, that the plaintiff is entitled to the conveyance prayed for and to one half the earnings of the brig, after the time when the plaintiff demanded a conveyance of Cartwright and Train ; but for no earnings before that time, unless it can be proved that at the time of the assignment there was no balance due to P. & C. Flint & Co. ; for Cartwright and Train have a right to avail themselves of all the equitable rights of the Flints, and they would clearly have the right to credit the earnings in reduction of their balance against Isaac Clark.

If the plaintiff then should insist upon his claim to any of the earnings before the demand, the accounts between P. & C. Flint & Co., and Isaac Clark must be opened, and Isaac Clark should be made a party. But if no such claim should be made, the plaintiff will be entitled to the conveyance prayed for, and one half of the earnings after the demand of the conveyance.